THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

VICTORIA HALTER, individually, on behalf of the Providence Health & Services 401(k) Savings Plan and on Behalf of all similarly situated participants and beneficiaries of the Plan,

Plaintiff,

v.

PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH & SERVICES TOTAL REWARDS MANAGEMENT COMMITTEE; John and Jane Does 1-30 in their capacities as members of the Administrative Committee,

Defendants.

NO. 2:25-cv-00210-JNW

**AMENDED COMPLAINT – CLASS ACTION**

## I.    NATURE OF ACTION

1.    Plaintiff Victoria Halter, individually, as a representative of the Class described below, and on behalf of the Providence Health & Services 401(k) Plan (the "Plan"), brings this action under 29 U.S.C. § 1132 against Defendants Providence Health & Services ("Providence"), the Providence Health & Services Total Rewards Management Committee (the "Committee"), and John Does 1-30 in their capacities as members of the Committee (collectively, "Defendants"), to remedy Defendants' breaches of fiduciary duties and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

2.    As fiduciaries to the Plan, Defendants were obligated at all times to act prudently and for the exclusive benefit of participants and beneficiaries. This Defendants did not do.

AMENDED COMPLAINT – CLASS ACTION - 1
CASE NO. 2:25-cv-00210-JNW

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

3.     Plaintiff brings this action to obtain the relief provided under ERISA § 409, 29 U.S.C. § 1109, for losses suffered by the Plan resulting from the Defendants' fiduciary breaches and prohibited transactions described below, and for other appropriate equitable and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. U.S.C. § 1102(a)(3).

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(a)(2), (a)(3) and (c)(1) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

5.     Venue is proper in this judicial district pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e),  and because on January 29, 2025, Defendants' unopposed motion to transfer venue under 28 U.S.C. § 1404(a) from Oregon District Court was granted.

## III.     THE PARTIES

6.     At all relevant times, Plaintiff Victoria Halter ("Halter"), by virtue of her employment with Providence and participation in the Plan, is or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches and ERISA violations. Thus, Halter is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

7.     The Providence Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

8.     Defendant Providence is a national, not-for-profit Catholic health system comprising fifty-one hospitals, over 1,000 clinics, and many other health and educational services employing over 124,000 serving patients in communities across seven Western states – Alaska, California, Montana, New Mexico, Oregon, Texas, and Washington.

9.     At all relevant times, Defendant Providence, a non-profit Catholic healthcare organization, is the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(2)(A), to the extent that it appointed members of the Committee and

AMENDED COMPLAINT – CLASS ACTION - 2
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

10. At all relevant times, Defendant the Committee was the Plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets.

11. At all relevant times, Defendants John Does 1-30, as members of the Committee, were parties-in-interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), and fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that they had or exercised discretionary authority respecting the administration or management of the Plan, and/or control of Plan assets. Plaintiffs will seek leave to amend the Complaint to name each of these John Does once they ascertain their identities in discovery. The Committee and John Does 1-30 will be referred to collectively as the "Committee."

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. The Plan is a multiple employer defined contribution 401(k) plan sponsored and administered by Providence Health & Services ("Company") and intended to provide benefits to eligible employees of participating employers. The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). Company is the Sponsor of the Plan under ERISA.

13. Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan Sponsor, is a fiduciary (hereafter "Plan Fiduciary" or Plan Fiduciaries").

14. In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

15. As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any

AMENDED COMPLAINT – CLASS ACTION - 3
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

16.    Under the terms of the Plan document, the Plan Fiduciaries were required to, among other things, act "for the exclusive purpose of providing benefits to Participants and their beneficiaries and defraying reasonable expenses of administering the Plan." The Plan document refers to the "expenses of administering the Plan" as "Plan expenses" (hereafter "Plan Expenses").

17.    The Plan Expenses include, among other things, administrative fees such as recordkeeping fees, withdrawal fees, loan maintenance fees, loan setup fees, and managed account fees, and investment management fees.

18.    Throughout the Class Period, the Plan has been funded by a combination of wage withholdings by Plan Participants and Company matching contributions, among other sources, each of which is deposited into the Plan's trust fund and allocated to individual Participant accounts.

19.    Throughout the Class Period, the terms of the Plan require Company to make matching contributions to the Plan based on each Participant's contributions.

20.    Company must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

21.    Upon their deposit into the Plan's trust fund, all Participant contributions and Company contributions become assets of the Plan.

22.    Under the terms of the Plan, Participants are immediately vested in their own contributions, as well as any actual earnings thereon and vested in Company matching contributions and any actual earnings on such amounts based on various schedules dependent on their employer group typically ranging from four to six years before being fully vested.

23.    To the extent a Participant is not 100% vested upon termination of employment, the Participant forfeits the value of Company contributions (hereafter "Forfeited Plan Assets")

AMENDED COMPLAINT – CLASS ACTION - 4
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

in his or her account on the earlier of the date the Participant takes a distribution of his or her vested interest in the Plan or the date the Participant incurs a five-consecutive-year break in vesting service (within the meaning of the plan document).

24.     Under the terms of the Plan document, the Plan Fiduciaries do not have discretion related to the use of Forfeited Plan Assets that were forfeited by Plan Participants. Rather, the Plan document specifically sets forth how Forfeited Plan Assets shall be used as follows:

> (a) All amounts that are forfeited in accordance with the terms of the Plan, whether temporarily or permanently, shall be credited to a Forfeiture Account under the Plan. Amounts held in a Forfeiture Account shall be applied as follows:
>
> (1) First, to pay Plan expenses not paid by Providence, to the extent permitted under applicable Department of Labor regulations and guidance;
>
> (2) To the extent amounts remain in the Forfeiture Account after the application of subsection (1) above, to restore Accounts in accordance with Section 7.3 or Accounts of lost payees in accordance with Section 16.6; and
>
> (3) To the extent amounts remain in the Forfeiture Account after the application of subsections (1) and (2) above, to offset any employer contributions to be made to the Plan.

25.     Providence, as the drafter of the Plan, plainly required Forfeited Plan Assets to fund Plan Expenses of Plan administration to benefit the Participants and Beneficiaries, not to fund Providence's funding obligation.[1]

---

[1] In contrast, some plan sponsors take a different approach and direct plan trustees/administrators that forfeited funds must first go to defray the sponsor's obligations. For example, during the same approximate time as the class period alleged herein, one large plan sponsor had the following provision:

> Forfeitures will be used in the following order: (1) to be restored to a Participants' account following reemployment in accordance with the preceding paragraph; (2) to reduce employer contributions, including, but not limited to, future amounts contributed by the Employer or Employer Contributions and Matching Contributions; and (3) pay reasonable expenses Plan.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

26.     Despite the clear requirement under the terms of the Plan document that the Forfeited Plan Assets were required first "to pay Plan expenses . . .", the Plan Fiduciaries instead *did not first* use the Forfeited Plan Assets to pay Plan Expenses.

27.     Contrary to the explicit terms of the Plan document, throughout the Class Period the Plan Fiduciaries caused Plan Participants to pay significant portions of the Plan Expenses contrary to the express provisions of the plan document through deductions from the accounts of Plan Participants.

28.     For example, in 2022 Plaintiff Halter paid over $30 in "Administrative Fees" deducted from her account.

29.     Simply stated, if Defendants had followed the mandatory terms of the Plan, Plan participants would not have been improperly charged Plan Expenses.

30.     Additionally, under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

31.     During 2018, a minimum of $4,149,035 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

---

Other Plan sponsors take a different approach and provide plan trustees/administrators with discretion how to use forfeited funds. For example, during the same approximate time as the class period alleged herein, one large plan sponsor had the following provision:

> Any amounts forfeited pursuant to this Section, any amounts attributable to forfeitures transferred pursuant to the merger of another tax qualified plan with this Plan, and any other amounts to be treated as forfeitures under the Plan, shall be applied, at the Company's election, to: (i) pay expenses of administering the Plan; (ii) with respect to forfeitures of Matching Contributions or Safe Harbor Matching Contributions, reduce the Participating Employers obligation to make Safe Harbor Matching Contributions; and (iii) with respect to forfeitures of Profit Sharing Contributions, allocated as Profit Sharing Contributions…

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

AMENDED COMPLAINT – CLASS ACTION - 6
CASE NO. 2:25-cv-00210-JNW

32.     During 2018, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $433,159 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of Dollars  in Plan Expenses indirectly through revenue sharing or other similar methods. In other words, some of the administrative services performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

33.     During 2018 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $4,149,035 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

34.     Moreover, on December 31, 2018 unallocated Forfeited Plan Assets were $501,878.

35.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $501,878 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $501,878 on December 31, 2018.

36.     During 2019, a minimum of $5,252,200 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

37.     During 2019, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $664,966 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of Dollars  in Plan Expenses indirectly through revenue sharing or other similar methods. In other words, some of the administrative services fees, i.e., Plan Expenses, performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

38.     During 2019 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $5,252,200 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

39.     Moreover, on December 31, 2019, unallocated Forfeited Plan Assets were $487,787.

40.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $487,787 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $487,787 on December 31, 2019.

41.     During 2020, a minimum of $5,590,362 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

42.     During 2020, instead of using the Forfeited Plan Assets to reduce Plan Expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $3,549,572 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of Dollars in Plan Expenses indirectly. In other words, some of the administrative services fees, i.e., Plan Expenses, performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

43.     During 2020 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $5,590,362 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

44.     Moreover, on December 31, 2020, unallocated Forfeited Plan Assets were $1,187,685.

45.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,187,685 in a timely fashion for

AMENDED COMPLAINT – CLASS ACTION - 8
CASE NO. 2:25-cv-00210-JNW

the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $1,187,685 on December 31, 2020.

46.    During 2021, a minimum of $10,344,820 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

47.    During 2021, instead of using the Forfeited Plan Assets to reduce plan expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $3,538,220 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of Dollars in Plan Expenses indirectly. In other words, some of the administrative services fees, i.e., Plan Expenses, performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

48.    During 2021 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $10,344,820 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

49.    Moreover, on December 31, 2021, unallocated Forfeited Plan Assets were $630,032.

50.    During 2021, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $630,032 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $630,032 on December 31, 2021.

51.    During 2022, a minimum of $63,604,261 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

52.    During 2022, instead of using the Forfeited Plan Assets to reduce Plan Expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $5,863,661 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of

AMENDED COMPLAINT – CLASS ACTION - 9
CASE NO. 2:25-cv-00210-JNW

Dollars in Plan Expenses indirectly. In other words, some of the administrative services fees, i.e., Plan Expenses, performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

53.     During 2022 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $63,604,261 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

54.     Moreover, on December 31, 2022, unallocated Forfeited Plan Assets were $1,112,450.

55.     During 2022, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $1,112,450 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $1,112,450 on December 31, 2022.

56.     During 2023, a minimum of $18,997,327 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Plan Expenses.

57.     During 2023, instead of using the Forfeited Plan Assets to reduce Plan Expenses as required by the express terms of the Plan Document, the Plan Fiduciaries caused Plan Participants to pay a minimum of $5,692,035 in Plan Expenses through deductions from the accounts of Plan Participants and also caused Plan Participants to pay hundreds of thousands of Dollars in Plan Expenses indirectly. In other words, some of the administrative services fees, i.e., Plan Expenses, performed for the Plan by the Plan's recordkeeper were paid from the total operating expenses of the Plan's investment options.

58.     During 2023 the Plan Fiduciaries, contrary to the express terms of the Plan Document, exercised discretion over, and control of, plan assets when deciding to use $18,997,327 in Forfeited Plan Assets to, among other things, offset Company contributions instead of paying all Plan Expenses with the Forfeited Plan Assets.

AMENDED COMPLAINT – CLASS ACTION - 10
CASE NO. 2:25-cv-00210-JNW

59.    Moreover, on December 31, 2023, unallocated Forfeited Plan Assets were $712,113.

60.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, plan assets by failing to use unallocated Forfeited Plan Assets of $712,113 in a timely fashion for the exclusive benefit of Plan Participants to avoid having unallocated Forfeited Plan Assets of $712,113 on December 31, 2023.

61.    Under the terms of the Plan and the provisions of ERISA, throughout the Class Period the Defendants (Plan Fiduciaries) improperly, disloyally, and imprudently exercised discretion over, and control of, plan assets when directing the use of Forfeited Plan Assets.

62.    As described in detail above, throughout the Class Period, the Plan Fiduciaries' improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer contributions.

63.    Additionally, that improper, disloyal, and imprudent exercise of discretion was in the best interest of Company because that option decreased Company's own contribution costs.

64.    Similarly, as described in detail above, throughout the Class Period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions instead of paying Plan Expenses reduced the value of Plan Assets and the accounts of Plan Participants and the benefits available to Plan Participants.

65.    As described in detail above, throughout the Class Period, the Plan Fiduciaries exercised discretion over, and control of, plan assets when directing the use of Participants' accounts to pay Plan Expenses to service providers.

66.    There are no facts or circumstances throughout the Class Period that make the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce Company contributions consistent with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits**

AMENDED COMPLAINT – CLASS ACTION - 11
CASE NO. 2:25-cv-00210-JNW

**to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

67. As described in detail above, throughout the Class Period, the Plan Fiduciaries improperly, disloyally and imprudently exercised discretion over, and control of, plan assets and consistently and reflexively chose to use the Forfeited Plan Assets for the Company's interest, to the detriment of the Plan and Plan Participants, by allocating Forfeited Plan Assets toward reducing the Company's outstanding and unpaid contributions owing to the Plan.

68. All else being equal, had the Plan Fiduciaries decided throughout the Class period to use Forfeited Plan Assets to defray Plan Expenses or allocated the Forfeited Plan Assets back to eligible participants, the value of the Plan and the value of the accounts of the Plan participants would have been greater thereby providing greater retirement benefits to Plan Participants.

## V.    CLASS ACTION ALLEGATIONS

69. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

70. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiff seeks to certify this action as a class action on behalf of all Providence Plan participants and beneficiaries. Plaintiff seeks to certify the following class:

All participants and beneficiaries of the Amazon Plan from January 1, 2018 through the date of class certification, excluding Defendants and members of the Committee.

71. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. The class includes over 20,000 members and is so large that joinder of all its members is impracticable.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

b. There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation:

Who are the fiduciaries liable for the remedies provided by 29 U.S.C. § 13 1109(a)? Did the fiduciaries of the Plan breach their fiduciary duties to the Plan with respect to their management and allocation of Plan assets? Did fiduciaries of the Plan engage in prohibited transactions with Plan assets? What are the losses to the Plan resulting from each alleged breach of ERISA?  What Plan-wide equitable and other relief should the Court impose to remedy Defendants' alleged breaches?

c. Plaintiff's claims are typical of the claims of the class because Plaintiff was a participant of the Plan during the class period and all participants in the Plan were harmed by the same alleged misconduct by Defendants.

d. Plaintiff is an adequate representative of the class because she was a participant of the plan during the class period, has no interests that conflict with any other members of the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

e. Prosecution of separate actions for these breaches of fiduciary duties and prohibited transactions by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 13 1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of

AMENDED COMPLAINT – CLASS ACTION - 13
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

fiduciary duties, prohibited transactions, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

72.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions and the common questions of law and facts predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

73.     Alternatively, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B) because the common issues described above predominate over any individualized questions.

74.     Plaintiffs are represented by counsel experienced in prosecuting ERISA class actions and with particular experience and expertise in litigation involving ERISA breaches of fiduciary duty and ERISA prohibited transactions.

## FIRST CLAIM

**BREACH OF FIDUCIARY DUTY TO DISCHARGE IN ACCORDANCE WITH PLAN DOCUMENTS CONSISTENT WITH ERISA**
**(29 U.S.C. 1104(a)(1)(D))**

75.     Plaintiffs incorporate the above allegations as if fully set forth herein.

76.     As alleged herein, 29 U.S.C. 1104(a)(1)(D) imposes a fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan.

AMENDED COMPLAINT – CLASS ACTION - 14
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

77.     The Plan documents required the Defendants to use the Forfeited Assets in Accounts to pay expenses of administration of the Plan.  Defendants failed to discharge their duty to act in accordance with the Plan document by using Forfeited Plan Assets to reduce employer contribution obligations in violation of the explicit Plan terms.

78.     Defendants caused losses to the Plan by forcing Plan participants and beneficiaries to incur avoidable Plan Expenses.  These losses resulted in less money invested in the Plan and lost investment returns.

79.     As a direct and proximate result of Defendants' fiduciary breaches, the Plan and the Class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.  Each Defendant is also subject to other equitable or remedial relief as appropriate.

80.     Each Defendant knowingly participated in the breach of the other Defendants, knew that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

81.     Plaintiffs have suffered losses as a direct result of the Defendants' breach of their fiduciary duty to discharge in accordance with Plan documents consistent with ERISA.

## SECOND CLAIM

## BREACH OF THE DUTY OF LOYALTY
## (29 U.S.C. 1104(a)(1)(A))

82.     Plaintiff re-alleges and incorporates in Count 1 paragraphs 1-64 of the Complaint.

AMENDED COMPLAINT – CLASS ACTION - 15
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

83. When exercising discretion and control over Forfeited Plan Assets and using them to reduce Company contributions, the Plan Fiduciaries considered the best interest of Company as opposed to Plan participants, in violation of ERISA.

84. Alternatively, when improperly exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan, the Plan Fiduciaries considered the best interests of Company, as opposed to Plan Participants, in violation of the explicit terms of the Plan document as well as ERISA.

85. When exercising control over Forfeited Plan Assets, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act **solely** in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

86. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

87. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

88. Plaintiffs have suffered Losses as a direct result of the Defendants' breach of their duty of loyalty.

AMENDED COMPLAINT – CLASS ACTION - 16
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**THIRD CLAIM**

**BREACH OF THE DUTY OF PRUDENCE**
**(29 U.S.C. 1104(a)(1)(B))**

89.    Plaintiff re-alleges and incorporates in Count 2 paragraphs 1-64 of the Complaint.

90.    When exercising control over Forfeited Plan Assets and using them to reduce Company contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

91.    Alternatively, when improperly exercising discretion and control over Forfeited Plan Assets, and failing to use them first to defray the reasonable costs of administering the Plan, contrary to the explicit terms of the Plan document, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

92.    When deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by alternatives under both ERISA and the Plan document, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce the Company's own contribution expenses, as opposed paying Plan Expenses or for other purposes

AMENDED COMPLAINT – CLASS ACTION - 17
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to *solely* consider which alternative would promote the **exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

93.     By refusing to use Forfeited Plan Assets to eliminate Plan Expenses that were instead charged to participant accounts, and instead deciding to use these Plan assets to reduce the Company's own contribution expenses, Defendants imprudently caused the value of the Plan's assets to decrease by causing  participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Plan expenses.

94.     Had the Plaintiffs conformed with the minimum standard of care required under ERISA, the Defendants (Plan Fiduciaries) would not have used Forfeited Plan Assets to reduce Company contributions.

95.     Alternatively, had the Plaintiffs conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

96.     Plaintiffs have suffered Losses as a direct result of the Defendants' breach of their duty of prudence.

**FOURTH CLAIM**

**SELF DEALING / PROHIBITED TRANSACTIONS**
**(29 U.S.C. 1106(B)(1))**

97.     Plaintiff re-alleges and incorporates in Count 3 paragraphs 1-64 of the Complaint.

98.     29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

AMENDED COMPLAINT – CLASS ACTION - 18
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

99. Defendants violated this prohibition in their management and control of Forfeited Plan Assets. By allocating these Forfeited Plan Assets toward offsetting the Company's outstanding and unpaid matching contributions owing to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

100. As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and the lost investment returns on those assets.

101. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

**FIFTH CLAIM**

**PROHIBITED TRANSACTIONS**
**U.S.C. 1106(a)(1))**

102. Plaintiff re-alleges and incorporates in Count 4 paragraphs 1-64 of the Complaint.

103. 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

104. Providence and the Committee are parties in interest, as that term is defined under 29 U.S.C. §1002 (14), because they are Plan fiduciaries and because Providence is the employer of Plan participants.

105. By electing to use Forfeited Plan Assets in the Plan as a substitute for future employer contributions to the Plan, and thereby saving the Company millions of dollars in contribution  expenses, Defendants caused the Plan to engage in transactions that constituted

AMENDED COMPLAINT – CLASS ACTION - 19
CASE NO. 2:25-cv-00210-JNW

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

106.    As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

107.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

**PRAYER FOR RELIEF**

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

a)    find and declare that Defendants have breached their fiduciary duty to follow the terms f the Plan documents, breached their fiduciary duties, and engaged in prohibited conduct and transactions as described above;

b)    find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

c)    order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

d)    Order the restoration of assets and profits secured by Defendants as a result of each violation of ERISA described above into the Plan and the participant's individual accounts;

e)    determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

f)    order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a), including bringing forward

AMENDED COMPLAINT – CLASS ACTION - 20
CASE NO. 2:25-cv-00210-JNW

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

calculations of losses on the conduct of Defendants from January 1, 2018 through to the date of Judgment;

g)      remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

h)      surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

i)      certify the class, appoint Plaintiff as a class representative, and appoint The Sharman Law Firm LLC and Terrell Marshall Law Group PLLC as class counsel;

j)      award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) or otherwise allowed by law;

k)      order the payment of interest to the extent it is allowed by law; and grant other equitable or remedial relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED AND DATED this 20th day of February, 2025.

TERRELL MARSHALL LAW GROUP PLLC

By: */s/ Jennifer Rust Murray*
Beth E. Terrell, WSBA No. 26759
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA No. 36983
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

Paul J. Sharman, *Admitted Pro Hac Vice*
Email: paul@sharman-law.com
THE SHARMAN LAW FIRM LLC
11175 Cicero Drive, Suite 100
Alpharetta, Georgia 30022
Telephone: (678) 242-5297

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com